Beatty v. Commonwealth.

---

Case 60—INDICTMENT—March 10.

# Beatty v. Commonwealth.

APPEAL FROM JEFFERSON CIRCUIT COURT.

1. Constitutional Law—Special Legislation for Particular Locality.—While "in a matter general to the entire State" the Legislature can not, under our Constitution, discriminate against or favor a particular locality, it may, without violating this rule, pass a law

providing a mode of selecting jurors in one county different from that which exists in the other counties, provided jurymen of the same character are selected or the same result reached.

2. JEFFERSON COUNTY JURY LAW CONSTRUED.—An act of the Legislature of February 21, 1890, the purpose of which was "to secure a more uniform and equal distribution of jury service among the citizens of Jefferson county," was not intended to regulate the qualifications of jurors, but merely the mode of selecting them, and should not be construed as depriving the commissioners of the power to strike from the lists furnished by the assessor those who are known to them to be disqualified as jurors under the general law.

3. IMPLIED REPEAL OF STATUTE.—The special law repeals by implication only such portions of the general law as, considering the spirit of the special law, are manifestly inconsistent with it. In order that there may be a repeal by implication, there must be such a conflict between the provisions of the earlier and the later law as to be irreconcilable by any fair construction.

4. ANCIENT MODE OF TRIAL BY JURY.—In determining what was the ancient mode of trial by jury, and whether the constitutional guaranty as to it has been violated, we must look to the law in force when our present Constitution was adopted.

5. SAME.—A law providing for the selection of jurymen by a different officer from the one who, by law, was required to select them at the time of the adoption of our Constitution would not be regarded as impairing the ancient mode of jury trial.

HELM & BRUCE, ANDREW A. HAGGAN FOR APPELLANT.

1. The Able jury law, approved April 21, 1890, is unconstitutional, because it severs Jefferson county from the balance of the State as to its jury system, and gives to that county a system the *necessary result of which is to produce juries inferior in quality to those produced by the general law of the State*. (Gen. Stats, chap. 62, art. 3, sec. 2; *Idem*, art. 4, secs. 1. 4; Sutton's Heirs v. Louisville, 5 Dana, 30; Lexington v. McQuillan's Heirs, 9 Dana, 516; Smith v. Warden, 80 Ky., 608; Kentucky Trust Co. v. Lewis, 82 Ky., 579; Johnson v. Ferrel, 8 Ky. Law Rep.)

2. The Able law is a violation of the constitutional guaranty of the ancient mode of trial by jury.

FRANK PARSONS, COMMONWEALTH'S ATTORNEY, FOR APPELLEE.

1. The Able law is constitutional.

2. The court properly refused a peremptory instruction.

3. The testimony admitted on behalf of the Commonwealth after defendant had closed his evidence was competent in rebuttal.

CHIEF JUSTICE HOLT DELIVERED THE OPINION OF THE COURT.

This appeal involves the constitutionality of the law of February 21, 1890, entitled "An act to secure a more' uniform and equal distribution of jury service among the citizens of the county of Jefferson and the city of Louisville.".

It is claimed, first, that it severs Jefferson county from the balance of the State as to the jury system, and necessarily gives to it a class of jurymen inferior to that provided by the general law, thus violating that equality in the law required by the Constitution; and, second, that it violates the constitutional guaranty of the ancient mode of trial by jury.

Notice of its provisions and of the general law becomes necessary. It provides that the county assessor shall every three years, or oftener if required, as therein provided, furnish to the jury commissioners a list of the names of all housekeepers within the county from which they shall "select" jurors for the courts therein named.

This is to be done by writing "the names of all persons," so furnished, upon slips of paper, "all" of the slips to be then deposited in a box, from which the commissioners are to draw the number of slips necessary to make the jury lists; and, after taking a list of the names so drawn, the slips taken out are to be placed in another box, and this process is to continue until the first box is empty, and then lists are to be drawn from the one in which the slips have been deposited, they, after the names have been transcribed, being returned to the first box, and so continue as lists may be needed.

Section eight provides: "That in making up the jury lists as herein required, the assessors shall ex clude therefrom the names of all persons who are not at least twenty-one years of age, housekeepers, sober, temperate, discreet, and of good demeanor;" and section six says: "When persons summoned to serve on juries are found to be permanently disqual ified physically, mentally, or morally, the clerk shall keep a list of all such for the said commissioners. who shall strike their names from the assessor's list, and as their names are drawn from the boxes they shall destroy the slips.

This is all of the act necessary to be recited for the consideration of the question before us. Turning now to the law applicable to the State generally, we find that section 2, article 3, chapter 62, of the General Statutes, provides: "No person shall be a competent juryman for the trial of criminal, penal, or civil cases in any court, unless he be a citizen, at least twenty-one years of age, a housekeeper, sober, temperate, discreet, and of good demeanor;" and section 4, article 4, says: "They (jury commissioners) shall select from the citizens of the different portions of the county one hundred persons, or a less number if so directed by the judge, free from all legal excep tions, of fair character and approved integrity, of sound judgment and well informed, to serve as petit jurors at the next term of court," and from the slips upon which the names so selected are to be written, they are to draw thirty names, which are to constitute the jury list.

It appears, therefore, that by the general law, jury-

men must be (1) citizens; (2) housekeepers; (3) twenty-one-years of age; (4) sober; (5) temperate; (6) discreet; (7) of good demeanor; (8) of fair character; (9) approved integrity; (10) sound judgment; and (11) well informed.

Under the act in question, however, the assessor is directed, in making out the names, to exclude only those who are not twenty-one years old, nor housekeepers, nor sober, nor temperate, nor discreet, nor of good demeanor. This leaves out of view the requirements of the general law for jurymen "of fair character and approved integrity, of sound judgment and well informed," and in this fact, it is said, consists the discrimination which will result in giving to Jefferson county an inferior character of jurymen, because, it is contended, that under the act relative to it, the duties of the jury commissioners are altogether clerical, and that they have no right to reject the names of those who are not of "fair character and approved integrity, of sound judgment and well informed." In this view we do not concur, and the act, in our opinion, does not admit of any such construction.

Undoubtedly in a matter general to the entire State, there can be no discrimination against, or favoritism of, one locality. Thus creditors can not be allowed to charge ten *per centum* interest in one county, while the general law fixes the rate at six *per centum* in all the other counties of the State. A rule of evidence or pleading can not be made for one county different from that in force in the balance of the State. Property in one county can not be made to pay a greater

rate of State tax than is paid by the other counties; but certainly the Legislature may constitutionally provide that an officer of a certain character may collect the tax in one county, while one of a different character does so in another, or that a mode of selecting jurors may be followed in one county which does not exist in the other counties, provided jurymen of the same character are selected, or the same result reached. Nor would their mere selection by a different officer from the one who, by law, was required to select them, at the time of the adoption of our Constitution, be treated as an impairment of the ancient mode of jury trial. If it be a matter of form, and not of substance, a mere change of manner in arriving at the same result, then there can be no ground of complaint to which a court will listen.

The evident and only purpose of this act, as both its title and provisions show, is to secure a more uniform distribution of jury service among the citizens of Jefferson county. It upholds, rather than violates, the constitutional principle of equality. As an aid to this end, it requires the assessor to furnish for the use of the jury commissioners a list of all the housekeepers of the county, excluding certain persons therefrom; but it nowhere declares who shall be a competent juryman. It does not regulate the qualifications of jurors; it was not intended to do so, and is not in this respect a law for Jefferson county different from that which prevails in the balance of the State. It does not provide that after the assessor purges his list as directed by the statute, all of the persons whose names are returned by him shall be competent jurymen.

It is, however, contended that it does so by impli-
cation by directing the names of "*all*" the persons so
returned to be written upon slips of paper, and "*all*"
of the slips to be placed in the box from which the
lists are selected.

But keeping in mind that the purpose of the statute
is not to fix the qualifications of jurors, but merely
*the manner* of selecting them, these expressions should
not be construed as depriving the commissioners of
the power to strike from the list those who are known
to them to be disqualified as jurors under the general
law.   If so, then the act would be held to relate to
the qualifications of jurors, as well as the mode of se-
lecting them.   The first section of it declares that it
is the duty of the commissioners *to select* the jurors.
It nowhere provides the oath to be taken by them,
but leaves them to be sworn as provided by section
1, article 4, chapter 62, of the General Statutes, a part
of the oath being that they will not "knowingly *select*
any man as a juryman whom *you believe to be unfit
and not qualified.*"   It can not for a moment be sup-
posed that the Legislature intended to forbid their
doing something which their oaths required them to
do.   The spirit of the law, and not its mere letter, is
to be sought, and the plain object of this statute was
to better the manner of selecting jurors instead of de-
basing the system, and thereby also the administration
of justice, by requiring a lower standard of qualifica-
tion.   The assessor's list is to be furnished in order
that the commissioners may have at hand the names
of all the housekeepers of the county, but few of
whom, being thousands in number in a county like

Jefferson, would be remembered by the commission-
ers; and by way of aiding them in the performance
of their sworn duties, the assessor is required to omit
from the list the names of those whom he knows to
be devoid of certain enumerated qualifications, and
which are also required by the general law; and as
both the assessor and the commissioners may err in
judgment, the sixth section of the statute, by way of
further purging the lists, provides that if, after the
jurymen are summoned, the court finds that any of
them are disqualified, the names of such persons shall
be furnished by the clerk to the commissioners, to be
stricken from the assessor's list, and the slips upon
which their names are written to be destroyed as they
are drawn from the boxes.   The act contains no re-
pealing clause, and of course only such portions of
the general law are repealed by implication as, con-
sidering the spirit of the statute and the real meaning
of its language, are manifestly inconsistent with it.
The implication of an intention to repeal must neces-
sarily flow from the language employed.   There must
be such a conflict between the provisions of the earlier
and the later law as to be irreconcilable by any fair
construction.   This does not exist in this instance.   If
the act in question were intended to relate to more
than the mere mode of selecting jurors, it would be
unenforceable, because of incompleteness.   It looks
alone to the proper distribution of the burden of jury
service, and it is still the duty of the jury commis-
sioners to see that no one is selected as a juryman
who is not qualified under the general law.   This be-
ing so, it is not open to the objection that it authorizes

a grade of jurymen inferior to that provided by the general law, thus destroying the constitutional equality required as to each locality in a matter general to the whole State.

It is conceded that when our present Constitution was adopted the law then in force as to the qualifications of jurors was similar to the present general law. That period of time must be looked to in determining what was the ancient mode of trial by jury, and whether the constitutional guaranty as to it has been violated. (Collins v. Henderson, 11 Bush, 86.) This being so, and as the act under consideration does not change the existing general law as to the qualifications of jurors, but only regulates the manner of their selection, it results that there has been no violation of this right.

The judgment is affirmed.